[S. F. No. 14332. In Bank.—June 3, 1932.]

ROBERTS, THOMAS & CO. (a Corporation), Appellant,
v. DEAN ALLEN et al., Defendants; COLUMBIA
CASUALTY COMPANY (a Corporation), Respondent.

Thomas, Beedy, Presley & Paramore for Appellant.

Walter S. Rountree, as *Amicus Curiae* on Behalf of Appellant.

Redman, Alexander & Bacon and Herbert Chamberlin for Respondent.

PRESTON, J.—Appeal from judgment entered in favor of defendant Columbia Casualty Company, upon the sustaining of its general demurrer to plaintiff's first amended complaint and refusal of plaintiff to further amend.

Two questions are presented: Was the demurrer properly sustained on the ground that the transaction involved was illegal and invalid, being in effect an agreement to manipulate and artificially maintain the market price of certain .stock? Was the transaction a "brokerage" transaction, within the meaning of the Corporate Securities Act (Stats. 1917, p. · 673, and acts supplementary and amendatory thereto), creating a liability on the part of defendant surety company, under the statutory bond issued, pursuant to said act, by it to the other defendants, for their alleged breach of obligation to plaintiff's assignor?

Subdivision 3 of section 5 of the Corporate Securities Act, as amended in 1925 (Stats. 1925, p. 967), requires that prior to the granting of a certificate to do business thereunder as an agent or broker, the applicant file a good and sufficient surety bond for $5,000 conditioned upon "the strict compliance with the provisions of this act, and the honest and faithful application of all funds received and the faithful and honest performance of all obligations · and undertakings in the purchase or sale of securities, by said broker, his agents and employees", etc.

The said amended complaint alleges that defendants Allen and Bachelder, doing business as Allen Bachelder Co., were engaged in the business of selling, offering for sale, negotiating for the sale of and otherwise dealing in securities, for the sale of which permits had been issued pursuant to the provisions of said act, and in the business of underwriting issues of such securities and purchasing them "with the purpose of reselling them and of offering them for sale to the public"; that about January 17, 1929, said defendants, as principals, and defendant Columbia Casualty Company, as surety, executed the $5,000 statutory bond required by section 5 of the act above quoted. The complaint sets forth the provisions of the bond in their entirety, the condition of which is that the principal, his agents and employees, shall strictly comply with the provisions of the act and "shall honestly and faithfully apply all funds received and faith-

fully and honestly perform all obligations and undertakings in the purchase or sale of securities by said broker, his agents and employees; and further shall pay all damages suffered by any person damaged or defrauded by reason of the violation of any of the provisions of said act'', etc. It is further stated that any person injured may bring an action for damages in his own name upon the bond.

The complaint then alleges the transaction which took place between defendant Allen Bachelder Co. and plaintiff's assignor, by reason of which plaintiff seeks to recover damages from defendant surety company under said bond, the substance of these allegations being as follows: On March 11, 1929, plaintiff's assignors, Carpenter & Co., wrote Allen Bachelder Co., stating: ''We and our associates are forming a Selling Group in which we will participate, and in which we are pleased to include you, to offer to the public at $30 Flat per share any part or all of 15,000 issued shares'' of a certain stock. We ''shall be Managers of the Selling Group with full powers'' and we and our associates ''as members to this Selling Group shall have the same concession as others included therein . . . Members . . . will be entitled to a selling concessions of $3.00 per share on sales confirmed to them by the Managers, except as provided below. The Selling Group will terminate . . . May 11, 1929,'' unless extended for not exceeding thirty days or terminated at any time by the managers in their discretion. ''Definitive certificates of stock will be deliverable . . . $29 per share flat; the balance of the selling concession to be paid upon termination of the Selling Group. This Selling Group Concession, however, will not be paid in respect to any shares delivered to any Selling Group member which may be repurchased or contracted for by the Managers during ·the life of the Selling Group, at or below $33. In lieu of cancelling the selling concession on any shares so repurchased the Managers may require . . . members to take up such shares at the cost of repurchase. . . . ''

Defendant Allen Bachelder Co. applied for 500 shares of said stock issue and agreed to be bound by the terms of the offer. They took delivery of 400 shares at $29. The selling group was maintained until May 29, 1929; upon its dissolution the stock dropped to $19 per share. Prior to that date, however, the 400 shares of stock had found their

way back upon the market and had been repurchased by plaintiff's assignors at $30 per share, at which price they demanded that defendants take them up. This defendants failed to do and as a result plaintiff claims its assignors were damaged in the sum of $11,200 (400 shares at $28, being the subscription price of $30 less the $2 unpaid balance of the $3 per share selling concession). Defendants also failed to take delivery of the other 100 shares of stock subscribed for, with alleged damage resulting to plaintiff's assignors of $2,700 ($30 per share less the $3 selling concession).

The complaint further alleges that defendants subscribed for said 500 shares "for the sole and single purpose of resale thereof to the public in the regular course of the brokerage business then and there being conducted by defendants as aforesaid". It alleges that defendants took delivery of 400 shares at $29, upon the representation that "irrespective of a resale of such securities to the public (they) were financially able to purchase and carry the same throughout the life of said subscription agreement" and were "financially able to perform all of their obligations" thereunder; that plaintiff's assignors relied at all times upon said representations, which defendants knew were false and were made for the purpose of inducing plaintiffs' assignors to make said agreement.

The complaint also alleges that in the securities brokerage business there exists a general custom, universally recognized, whereby a group underwriting securities, and a group formed to offer such securities for sale to the public protect the public by agreeing to maintain a minimum market price for a period of time sufficiently long to permit the distribution of such securities into the hands of *bona fide* permanent investors, thus guarding against what is commonly known as a "bear raid" made by market manipulators to the injury of *bona fide* investors.

The prayer of the complaint is for judgment against the defendants in the sum of $4,400, interest and costs. Defendant surety company filed a general demurrer, which was sustained, as aforesaid, and judgment in its favor followed, from which plaintiff has appealed.

█ We have set forth the facts as alleged in the amended complaint at some length in order that there may be no

misunderstanding as to the true nature of the transaction upon which plaintiff's alleged cause of action is based. It will be noted that under said act a broker's bond is required for the purpose of protecting persons injured by failure of a broker to perform "obligations and undertakings in the purchase or sale of securities". We take it to be evident that negotiations for the purchase or sale of securities must be pending and that the injured party must be the buyer or the seller therein before the provisions respecting a bond may be held to apply.

Defendant broker, under the agreement here involved, did not contract to buy securities from plaintiff's assignor, as a principal; at most said defendant failed to live up to its covenants respecting subscription to stock owned by another. And plaintiff's assignor, under said agreement, sold no stock; hence both of these brokers were on practically the same footing—they were both salesmen of the stock of another and joint agents for that purpose.

The Corporate Securities Act confines its solicitude largely to the welfare of the investing public; to protect them from fraud and imposition is its prime purpose. It is no concern of the corporation commissioner or of the public that one broker co-operating with another broker in an effort to market a set of securities, fails to live up to his covenant with his co-broker. It is true that in *Walsh v. Standard Acc. Ins. Co., ante,* p. 587 [12 Pac. (2d) 16], this day decided, we accepted and applied the enlarged definition of the term "broker" found in section 2, subdivision 11, of the act. We also held in that case that the relation of principal and agent was not a requisite to the maintenance of an action by an injured party against the offender. But these holdings do not authorize a departure from the spirit and purpose of the legislation so as to include transactions such as the one here under consideration.

Some space is devoted by counsel to discussion of the legality of a compact of this character between brokers. It is easily conceivable how such a plan of action might be so abused as to foist upon the public at an arbitrary price, securities which might, under normal stimulation, be practically worthless, thus effecting a subversion of the underlying purpose of this legislation. Nevertheless, the practice has its defenders. However, under the views which we

have expressed it is unnecessary to deal with this question further at this time. It is enough to hold that the special remedy provided for in the act is not intended to apply to a situation such as the one before us.

The judgment is affirmed.

Shenk, J., Curtis, J., Langdon, J., Tyler, J., *pro tem.*, and Waste, C. J., concurred.

Rehearing denied.